**KEITH v. B. F. GOODRICH CO.**
No. 13079.

Court of Civil Appeals of Texas. Dallas.
July 4, 1941.

Rehearing Denied Aug. 1, 1941.

Carlisle & Henry, of Kaufman, for appellant.

Herbert S. Bonney, Jr., of Dallas, for appellee.

LOONEY, Justice.

B. F. Goodrich Company, manufacturer and dealer in automobile tires, tubes, etc.. a nonresident corporation, sued its former dealer at Kaufman, Texas, J. M. Keith, in an action of debt, on a note and an open account. Neither the existence nor the amount of the indebtedness is questioned. The defendant answered, however, that, having ceased to represent plaintiff as dealer, he was checked out by a representative of the plaintiff on February 14, 1938, and, at that time, made a final settlement, plaintiff agreeing to accept forty-two tires and sixty-five tubes, previously purchased by the defendant from plaintiff, and a check for $45.63, in full settlement of his indebtedness; that plaintiff took possession of the tires and tubes, caused them to be removed from defendant's place of business and stored in a garage operated by a Mr.

Taylor, in the City of Kaufman; that subsequently, all the tires except two and all the tubes except ten were stolen; thereafter, being informed that Mr. Taylor was moving, defendant took possession of the remaining tires and tubes, holding same for plaintiff; and, as the check for $45.63 given in the settlement had not been paid by the bank, the defendant tendered that amount in court, together with the tires and tubes in his possession; praying that he be discharged and that plaintiff take nothing.

Plaintiff replied that the agent, with whom defendant consummated the alleged settlement, was without authority to accept the tires and tubes in settlement of said indebtedness, and, as a basis for this contention, invoked certain provisions of the dealer's contract between plaintiff and defendant, as follows: "We agree not to return for exchange or credit any products delivered hereunder unless previously authorized in writing by you, and we further agree to prepay all transportation charges, and upon acceptance by you of such returned products, to accept credit therefor at invoice price, or price in effect at the time of credit, whichever is lower; less your regular service charge then in effect to cover your cost of handling; * * * This memorandum may be signed without alteration of printed condition and/or canceled in its entirety by any one of our District Managers but its provisions cannot be altered, waived or modified except by a written instrument signed by an executive officer of your company and ourselves." Plaintiff contended that, at no time, did any of its officers approve the return of the merchandise in settlement of the indebtedness sued for.

The defendant, in a supplemental answer, replied that plaintiff customarily waived the provisions of the written contract relied upon and, further, that by reason of having taken possession of the tires and tubes and removing same from the defendant's possession and storing them in another place, where, subsequently, they were stolen, plaintiff was estopped to invoke the quoted provisions of the contract.

In this status of the pleadings, the case was submitted to a jury, whose verdict vindicated the several contentions of the defendant; finding that, on February 14, 1938, plaintiff's representatives, who checked defendant out, made a full and final settlement whereby plaintiff accepted forty-two tires, sixty-five tubes, and a check for $45.63, in satisfaction of defendant's indebtedness to the plaintiff; that Mr. Lewis, plaintiff's representative who checked defendant out and made the settlement, was authorized to do so by plaintiff's district manager, Mr. Meurin; that, in the course of their dealings, plaintiff customarily permitted the defendant to return merchandise and receive credit therefor upon his account, without obtaining or requiring prior written authority for such purpose.

The court overruled the defendant's motion for judgment, but, sustaining plaintiff's motion for judgment non obstante veredicto, accordingly rendered judgment in its favor; from which, the defendant appealed. The findings of the jury, in our opinion, were authorized by the evidence and are adopted as our conclusions of fact on the respective issues in the case.

Plaintiff's contention, which evidently was sustained by the trial court, is reflected in its motion for an instructed verdict, to the effect that the agreed settlement, not being in writing, as provided in the quoted provisions of the dealer's contract, was a mere nullity and, as a corollary thereto, in its motion for judgment non obstante veredicto, contended that, in view of said provisions of the dealer's contract, the issues submitted and the answers of the jury thereto were wholly immaterial and properly could not form the basis of a judgment in favor of the defendant.

We think this position erroneous and that the court erred in ignoring the verdict of the jury and rendering judgment for the plaintiff.

In the situation presented, the evidence most favorable to the defendant will be considered. That a settlement was consummated between plaintiff and the defendant as testified to by him, and as found by the jury, must be accepted as a fact, thus narrowing the inquiry to the question whether, in view of the quoted provisions of the dealer's contract, the settlement was binding upon the plaintiff and/or, in view of the established facts, plaintiff was estopped to rely upon the quoted provisions of the contract.

Assuming, but not deciding that the provisions of the contract, relied upon by the plaintiff as justification for its at-

tempted repudiation of the settlement, were intended not only to apply to current transactions with dealers, but to final settlements such as we have under consideration, which we think doubtful, yet such provisions were for the exclusive benefit of the plaintiff and, of course, could be waived by it, or anyone representing it in its corporate capacity. Mr. Meurin, plaintiff's district manager at Dallas, represented it in its corporate capacity; in other words, was its alter ego; and it was with Mr. Meurin that the defendant made the distributor's contract under which he had been dealing, and it was to Mr. Meurin that the defendant announced his desire to sever his relations with the plaintiff, as distributor, and to be checked out. Mr. Meurin deputized Mr. Lewis, traveling salesman in the service of plaintiff, to check the defendant out, and after consummating the settlement with the defendant, Lewis, on behalf of the plaintiff took possession of the tires and tubes that he received in the settlement, and had them stored in a garage in the City of Kaufman, operated by Mr. Taylor, where they remained for several months, and at intervals were inspected and rechecked by Mr. Lewis, until in July, 1938, the garage was burglarized and practically all the merchandise stolen.

The defendant testified, and the jury found, that in their dealings, defendant would be credited for all merchandise returned, without written authorization from anyone. Mr. Fred Harrison, plaintiff's district credit manager at Dallas, gave testimony on the point; was asked:

"Q. For instance, they (meaning dealers) want to exchange a larger set of tires for a smaller set of tires—do you have charge of that? A. No.

"Q. Who has charge of that? A. Mr. Meurin or one of his assistants.

"Q. Either he or one of his assistants? * * * A. Yes.

"Q. They do do that? A. Yes, we exchange merchandise.

"Q. You exchange merchandise? You do that without anything in writing, don't you, Mr. Harrison? A. Occasionally I guess they do that.

"Q. Occasionally they do that. That is the custom for a dealer to come in with a bunch of tires, they go in the warehouse and exchange those for other tires? A. Yes.

"Q. Or to bring tires back and get credit for them? A. No, if the dealer brings the merchandise into our warehouse and the circumstances are such we could clean up his account and settle it then and there and we figure it advisable to do so.

"Q. I am talking about a man there that had four or five tires and he wants to bring them in and get credit for them: you do that? A. Oh, that has been done on occasions, and he gets authority from some member of the district manager's department.

"Q. In other words, the district manager himself doesn't have to give that authority, does he? A. When merchandise comes back for straight credit either the district manager or myself gives that authority. ·

"Q. You just said the district manager or some member of his department? A. I said either the district manager or myself, when merchandise comes in for straight credit.

"Q. You all can do that? A. Yes.

"Q. And you do it without any authority in writing, don't you Mr. Harrison? A. We have done that, yes."

So we think it perfectly obvious that, in its dealings with the defendant, and in its dealings generally with distributors, merchandise was accepted and· credit given therefor, without written authorization from anyone, and that the provisions of the contract invoked by the plaintiff were customarily disregarded as the occasion demanded.

Besides, in view of the fact that plaintiff, through its Mr. Lewis, took possession of the tires and tubes delivered to it by the defendant, keeping the merchandise on storage for several months, until the same, or practically all, was stolen, so that now the defendant could not be placed in statu quo, plaintiff, in our opinion, is estopped to rely upon the provisions of the contract pleaded. For the reasons indicated, the judgment below is reversed and judgment is here rendered that plaintiff take nothing against the defendant, but is entitled to receive the fund and merchandise tendered by the defendant.

Reversed and rendered.